STATE v. CARL LIPPARD AND PAUL LIPPARD.

(Filed 19 May, 1943.)

**1. Conspiracy § 3: Criminal Law § 23—**

The charge of conspiracy to violate the law and the charge of the consummation of the conspiracy by an actual violation of the law are charges of separate offenses, and a conviction of one cannot be successfully pleaded as former jeopardy on an indictment for the other.

**2. Criminal Law § 23—**

Offenses are not the same, on a plea of former jeopardy, if, upon the trial of one, proof of an additional fact is required which is not necessary to be proven in the trial of the other, although some of the same acts may be necessary to be proven in the trial of each.

**3. Indictment § 18—**

The granting or denial of motions for bills of particulars is within the discretion of the court and not subject to review except for palpable and gross abuse thereof.

**4. Trial § 4—**

The allowing or disallowing of a motion for a continuance is vested in the sound discretion of the trial judge and his ruling thereon is not reviewable, where there is no manifest abuse of such discretion.

**5. Criminal Law § 50a: Trial § 31—**

A statement of the court, made prior to the time the case was called for trial, indicating that he would not try the case until defendants were apprehended, does not violate the statute (C. S., 564) prohibiting the judge from expressing an opinion as to whether a fact has been suffi-

ciently proven, since this statute relates only to the expression of opinion during the trial of the case.

### 6. Criminal Law § 50b—

The trial judge is vested with the discretion to permit private counsel to appear, with the Solicitor for the State, in a criminal prosecution, even after the trial has been entered upon and some of the jurors selected.

### 7. Criminal Law § 41g—

The evidence of an accomplice, who testifies against defendants in a criminal prosecution, cannot be assailed by the defense on the ground that such witness was induced to so testify by hope or fear. Such objection is available to the witness only.

### 8. Evidence § 18—

In a criminal prosecution for conspiracy to violate the liquor laws, where a witness testified for the State that he was employed by defendants to haul liquor from Baltimore to Charlotte and that it was agreed that the money to pay for the liquor would be sent witness from Charlotte by telegraph in the name of one Carling, it was competent for the Charlotte superintendent of the telegraph company to testify that large sums were so sent to witness.

### 9. Evidence § 36—

The superintendent of a telegraph company may testify that money orders of his company introduced in evidence are the original records kept in the office of his company and of which he has charge, even where the witness did not personally make such records.

### 10. Criminal Law § 41g—

While the unsupported testimony of an accomplice should be received with caution, if it produces convincing proof of guilt, it is sufficient to sustain a conviction.

APPEAL by defendants from *Burgwyn, Special Judge,* at 21 September, 1942, Extra Criminal Term, of MECKLENBURG.

The defendants were tried and convicted upon a bill of indictment which charged that they, together with others, did "unlawfully and wilfully conspire, confederate and agree together to buy, possess, possess for the purpose of sale, transport and sell intoxicating liquor, and in furtherance of such conspiracy, confederation and agreement, did unlawfully and wilfully buy, possess, possess for the purpose of sale, transport and sell intoxicating liquor. . . ."

From judgment of imprisonment predicated upon a verdict of guilty the defendants appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*G. T. Carswell for defendants, appellants.*

SCHENCK, J.  Although the bill of indictment charges both a conspiracy to violate the laws relating to intoxicating liquors and the actual violation of such laws in furtherance of such conspiracy, the charge of the consummation of the unlawful purpose was not submitted to the jury, the court having limited the consideration of the jury to the offense of conspiracy, instructing the jury: "The only question before you gentlemen is a pure question of fact, that fact being: Are you satisfied beyond a reasonable doubt from this testimony in this case that these men, or any two of them, during the years 1941 and 1942, up to March 22nd, conspired together to violate the prohibition law?  If you are so satisfied, it will become your duty to convict those two of them about whom you are so satisfied, or any other about whom you are so satisfied, in addition to any two of them, if you are so satisfied that more than two of them did so conspire.  If you are not satisfied about any two of them or more than two of them, it will become your duty to acquit them all."

The defendants bring forward by proper exceptive assignments of error the court's refusal to allow their motion for dismissal based upon a plea of former convictions and double jeopardy.

The warrants in the cases upon which the defendants rely as former convictions charged separately that each defendant "did wilfully, maliciously, unlawfully and feloniously manufacture, buy, possess, possess for the purpose of sale, retail and transport intoxicating liquors. . . ." There was no charge of joint action or agreement and the proof of such action or agreement was in no wise necessary for conviction thereunder.

Joint action and agreement were essential elements of the only offense submitted for the consideration of the jury upon the bill of indictment upon which the defendants were convicted, namely, unlawful conspiracy.

Since the essential elements of the offenses charged in the bill of indictment in this case and in the warrants to which they had formerly pleaded guilty were not the same, the offenses were different in law and in fact.  Therefore, the court properly held as a matter of law that the plea of former jeopardy was not tenable.

The charge of conspiracy to violate the law and the charge of the consummation of the conspiracy by an actual violation of the law are charges of separate offenses.  *S. v. Dale,* 218 N. C., 625, 12 S. E. (2d), 556.

In enumerating certain principles applicable to a plea of double jeopardy, *Allen, J.,* in *S. v. Freeman,* 162 N. C., 594, 77 S. E., 780, states: "1. That a person cannot be tried twice for the same offense. 2. That the offenses are not the same if, upon the trial of one, proof of an additional fact is required which is not necessary to be proven in the trial of the other, although some of the same acts may be necessary to

be proven in the trial of each." In order to convict in a trial for conspiracy certain facts are required to be proven that are not at all essential to a conviction of the consummated offense. The consummated offense and the conspiracy to commit the offense are by no means the same. ". . . a prior prosecution, whether it results in an acquittal or whether such prior prosecution results in a conviction of a particular crime, is ordinarily no bar to a prosecution for a conspiracy to commit the same." 22 C. J. S., sec. 288, page 432.

The real issue was whether the offenses charged in the warrants to which the defendants pleaded guilty and charged in the bill of indictment upon which they were subsequently convicted were the same, and the record shows they were not. *S. v. Gibson,* 170 N. C., 697, 86 S. E., 774.

"The true test is as stated in *Rex v. Vandercomb:* Could the defendant have been convicted upon the first indictment upon proof of the facts, not as brought forward in the evidence, but, as alleged in the record of the second? . . . The only safe rule is to stand by the decisions of our courts, and to hold that the plea of former acquittal cannot avail, unless there should be an exact and complete identity in the two offenses charged." *Ruffin, C. J.,* in *S. v. Nash,* 86 N. C., 650.

To support the plea of former conviction or acquittal the two prosecutions must be for the same offense, it is not enough that they grow out of the same transaction. *S. v. Freeman, supra.* A previous acquittal or conviction protects the defendant from being tried again for the same offense, but is not an estoppel on the State to show the same facts, if in connection with other facts, they are part of the proof of another and distinct offense. *S. v. Hooker,* 145 N. C., 581, 59 S. E., 866. "The test (for disposing of a plea of former jeopardy) is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense." *Stacy, C. J.,* in *S. v. Midgett,* 214 N. C., 107, 198 S. E., 613.

In the very recent case of *S. v. Davis, ante,* 54, *Stacy, C. J.,* reviews the decisions of this Court relative to the plea of former jeopardy and holds that the lower court was correct in ruling that the evidence was not sufficient to sustain the plea when it tended to show that the warrant to which the defendant had pleaded guilty was not as broad as the four-count indictment upon which the defendant was subsequently convicted. We have identically that same situation in the case at bar. The defendants pleaded guilty to warrants which charged the consummated offense of violating the laws relating to intoxicating liquors, and the bill of indictment upon which they have been convicted was broader and charged a conspiracy to violate such laws, as well as the actual violation thereof.

We conclude that there was no error in the ruling of his Honor that the plea of former conviction and double jeopardy was, as a matter of law, untenable.

The defendants present for consideration by proper exceptive assignments of error his Honor's refusal to allow their motions for bills of particulars. They concede, however, that the granting or denial of their motions was within the discretion of the court, and not subject to review except for palpable and gross abuse thereof. C. S., 4613; *S. v. Hinton,* 158 N. C., 625, 74 S. E., 104; *S. v. Dewey,* 139 N. C., 556, 51 S. E., 937. We have examined the record as it relates to the court's ruling upon these motions and we do not concur in the position taken by the defendants that such abuse of judicial discretion appears therein.

The defendants also present for consideration by proper exceptive assignments of error his Honor's refusal to allow their motions for continuances of the trial of the case. The allowing or disallowing of a motion for a continuance is also a matter vested in the sound legal discretion of the trial judge, and his ruling thereon is not reviewable except in case of manifest abuse of such discretion, where "the circumstances prove beyond doubt hardship and injustice." *S. v. Sauls,* 190 N. C., 810 (813), 130 S. E., 848. We have examined the record as it relates to these motions for continuances and we find no evidence justifying the conclusion that hardship and injustice has been perpetrated upon the defendants by ruling them to trial.

The statements of the court made prior to the time the case was called for trial indicating that he would not try the case until the appealing defendants were first apprehended did no violence to the statute (C. S., 564), prohibiting the judge from expressing an opinion as to whether a fact had been sufficiently proven, since such statute relates only to the expression of opinions during the trial of the case. *S. v. Jacobs,* 106 N. C., 695, 10 S. E., 1031.

The contention of the defendants that they were entitled to have a declaration of mistrial and continuance because after eight members of the jury had been selected Honorable Jake F. Newell, a member of the bar, was permitted to be associated with the solicitor for the State in the prosecution of the case is likewise untenable. The discretion vested in the trial judge to permit private counsel to appear with the solicitor has existed in our courts from their incipiency. *S. v. Lea,* 203 N. C., 13, 164 S. E., 737; *S. v. Carden,* 209 N. C., 404, 183 S. E., 898.

The court asked each of the jurors already selected if they were related to Mr. Newell or were his clients; and also if they were related to the Reverend Doctor Ernest Neal Orr, who Mr. Newell stated had employed him, or were members of his church, to all of which interrogatories a negative answer was given. In view of the fact that defendants had

formerly interrogated the jurors upon other subjects, it is not seen how they could have been prejudiced by his Honor's refusal to allow them to further interrogate the jurors, and especially is this true in the light of the fact that it does not appear in the record what other interrogatories the defendants desired to propound to the jurors.

The testimony of one L. W. Teter offered by the State is assailed by exceptive assignments of error properly brought forward by the appellants. Teter testified that he was employed by the defendants to drive a truck from Charlotte, North Carolina, to Baltimore, Maryland, and there to load the truck with intoxicating liquors, and bring the truck and its load to North Carolina, and that in the course of his employment he did so drive the truck and brought about fifteen loads of liquor from Baltimore to Charlotte. The objection to this testimony is based upon the contention that the witness was induced to make such statement while in custody, and that such statement was induced by hope or extorted by fear. However, the statement, if made, was not introduced in evidence, and obviously therefore could not be made the bases for valid assignments of error. Testimony to the effect that the witness hauled liquor from Baltimore to Charlotte for the defendants was given by the witness himself, from the witness stand in the due course of the trial, and it cannot be assumed that such testimony was induced by hope or extorted by fear. It would rather be assumed, since there is an absence of the contrary appearing, that the judge would have protected the witness from any abuse. Also any objection to the manner in which this testimony was procured was available only to the witness Teter and not to the defendants. *S. v. Cobb,* 164 N. C., 418, 79 S. E., 419. These assignments of error are not sustained.

The defendants likewise assail by exceptive assignments of error properly brought forward the testimony of one J. L. Nowall, superintendent of the Western Union Telegraph Company of Charlotte, to the effect that money orders in large amounts were sent via the telegraph company in the name of H. B. Carling from Charlotte, North Carolina, to L. W. Teter in Baltimore, Maryland. This evidence was introduced to corroborate the testimony of the witness Teter who had previously testified that Carl Lippard sent him the money in Baltimore with which to pay for the liquor he was to haul to North Carolina; that it was prearranged that Carl Lippard would so send the money by telegraph in the name of H. B. Carling. This evidence was clearly corroborative of the testimony of Teter.

The witness Nowall testified that the money orders introduced in evidence were the original records kept in the office of the Western Union Telegraph Company in Charlotte; that he had charge of the records. The money orders were therefore competent evidence. *Ins. Co. v. R. R.,*

138 N. C., 42, 50 S. E., 452. The fact that the witness Nowall did not personally make the records did not render them incompetent. *Flowers v. Spears,* 190 N. C., 747, 130 S. E., 710. These assignments of error are not sustained.

The defendants make the following excerpt from the charge the basis of an exceptive assignment of error, to wit: "Now, in respect to that the Court charges you that you should be cautious of convicting on the unsupported testimony of an accomplice. However, our Supreme Court has repeatedly held that the unsupported testimony of an accomplice, while it should be received with caution, if it produces convincing proof of the defendants' guilt, is sufficient to sustain a conviction." This excerpt is in accord with *S. v. Gore,* 207 N. C., 618 (620), 178 S. E., 209, and the assignment of error is therefore untenable.

On the entire record, we find

No error.